UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FUNCTIONAL PATHWAYS OF           )
TENN., LLC,                       )
       Plaintiff,               )
                                 )    No. 3:10-cv-409
v.                                )    (Phillips)
                                 )
WILSON SENIOR CARE, INC., f/k/a   )
THE WILSON GROUP, INC., and       )
HERITAGE HEALTHCARE, INC.,        )
       Defendants.              )


## <u>MEMORANDUM AND ORDER</u>

**I.**    **Introduction**

        This matter is before the Court on Defendant Wilson Senior Care, Inc.'s Motion to Dismiss [Doc. 4] and Defendant Heritage Healthcare, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue [Doc. 6]. For the reasons stated herein, Defendant Wilson Senior Care, Inc.'s Motion to Dismiss is **DENIED**; Defendant Heritage Healthcare, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue is **GRANTED IN PART** and **DENIED IN PART**; and the above captioned case is **TRANSFERRED** to the United States District Court for the District of South Carolina.


**II.**    **Background**

        Plaintiff Functional Pathways of Tennessee, LLC brings this suit against Defendants Wilson Senior Care, Inc. ("WSC") and Heritage Healthcare, Inc. ("Heritage"), alleging that WSC breached a contract with Plaintiff and that Defendant Heritage induced WSC to make the breach and unlawfully interfered with the contract. [Compl., Doc. 1-1.]

Plaintiff is a Tennessee limited liability company with its principal place of business at 614 Mabry Hood Road, Suite 301, Knoxville, Tennessee, 37932. *Id.* ¶ 1. Plaintiff is in the business of providing comprehensive therapy services, including physical therapy, occupational therapy, and speech therapy, at long-term care facilities, hospital skilled nursing units, and post-acute-care units. *Id.* ¶ 4.

Defendant WSC is a South Carolina corporation with its principal place of business at 116 Cashua Street, Darlington, South Carolina, 29532. [Dennis Lofe Aff., Doc. 5, Exhibit B, ¶ 5.] WSC operates three nursing homes, all of which are located in Darlington County, South Carolina. *Id.* ¶ 3. Its mission is to provide "superior senior care services to the residents of Darlington County and surrounding communities." *Id.* ¶ 4. WSC claims that it does not have any employees, agents, or offices in Tennessee, owns no real property in Tennessee, has not specifically targeted Tennessee persons or businesses for sale of goods or services there, and has never derived revenues from goods or services used or consumed in Tennessee. *Id.* ¶¶ 7-10, 21. In addition, WSC employees have not traveled to or been in Tennessee to conduct business or transactions with any business or entity in Tennessee. *Id.* ¶ 11. Since at least as early as 2003, WSC has operated a website at http://wilsonseniorcare.com, which provides information about WSC's various locations and services. *Id.* ¶ 14. The website provides users an electronic "contact us" form that allows a person to submit basic contact information and general comments to the website host. *Id.* ¶ 16. No goods or services are sold over the website, and no request for employment with WSC can be submitted through the website. *Id.* ¶¶ 17-18.

Defendant Heritage is a South Carolina corporation with its principal place of business at 536 Old Howell Road, Greenville, South Carolina, 29615. [Compl. ¶ 3.] Like Plaintiff, Heritage is in the business of providing therapy services to residents at long-term care

facilities, which it achieves through contractual relationships with such facilities. *Id.* ¶ 9. From January 29, 2004 to November 30, 2010, Heritage provided such therapy services at Hillcrest Nursing Home in Knox County, Tennessee. *Id.*; [Lesa Fugate Day Aff., Doc. 25-3, ¶ 5.] During this time, Heritage had physical therapists, occupational therapists, and speech therapists working in Hillcrest facilities in Knox County. [Day Aff. ¶ 6.] In addition, Plaintiff also asserts that Heritage solicited business from Hillcrest and other potential customers in Knox County, [Compl. ¶ 9], and used the internet to solicit prospective employees in the Knoxville area to submit job applications. *Id.*

The facts relevant to Plaintiff's claims are as follows. In 2004, WSC and Plaintiff contracted for Plaintiff to provide physical therapy services at WSC's facilities. Pursuant to this contract, known as the Therapy Services Agreement ("TSA"), therapists who were trained in Knoxville, Tennessee and employed by Plaintiff worked at and provided therapy services at WSC's senior care facilities in Darlington County, South Carolina between March of 2004 and June of 2009. During this time, WSC mailed payments, made telephone calls, and sent emails to Plaintiff's principal place of business in Knoxville, Tennessee. *Id.* ¶ 5. WSC also developed a relationship with Tennessee Insurance Service, a brokerage firm in Knoxville, to which WSC mailed checks, exchanged communication, and transmitted claim information related to Plaintiff's provision of services under the TSA contract.

In 2009, WSC decided to terminate the TSA and perform its therapy services in house. It wished to hire several of Plaintiff's employees who had performed therapy services at WSC's facilities; however, the TSA contained a provision precluding WSC from hiring such employees for a period of one year after the termination of the TSA. Accordingly, on or about June 1, 2009, WSC and Plaintiff entered into the agreement in dispute in this case ("RFR").

3

Pursuant to the RFR, Plaintiff was obligated not to prevent WSC from hiring Plaintiff's employees or former employees at WSC's South Carolina facilities, and WSC was obligated to provide Plaintiff with a right of first refusal if WSC chose to again pursue outside therapy services in its South Carolina facilities within a three-year period following termination of the TSA. The RFR also contained a choice-of-law provision providing that the RFR "shall be governed and construed in accordance with the laws of the State of Tennessee." [Compl. ¶ 8.] The parties did not include a jurisdictional provision in the RFR. The contract drafted by Plaintiff, emailed to WSC in South Carolina, signed by a duly authorized representative of WSC, and emailed back to Plaintiff in Tennessee. *Id.* ¶ 19.

Plaintiff alleges that WSC breached the RFR in 2010 by outsourcing therapy services to another therapy services provider, Heritage, without first offering Plaintiff the right to first refusal with respect to the same. *Id.* ¶¶ 16-18. Further, Plaintiff claims that Heritage interfered with and induced WSC to breach the RFR by "offering to provide therapy services cheaper than WSC believed it could obtain the therapy services from" Plaintiff. *Id.* ¶¶ 22-24.

Plaintiff claims that the Court has personal jurisdiction over WSC because WSC (1) conducted business and corresponded with Plaintiff via mail, facsimile, email, and telephone, including sending one or more checks to Plaintiff through the mail; (2) entered into an agreement with Plaintiff, which was to be construed in accordance with the laws of Tennessee; and (3) advertised its goods and services by way of a website. *Id.* ¶¶ 5-9. Plaintiff claims that the Court has personal jurisdiction over Heritage because Heritage has (1) provided therapy services in Tennessee; (2) solicited business from potential consumers in Tennessee; (3) taken "other steps to conduct business or engage in commercial activity within the State of Tennessee"; and (4) used the internet to solicit prospective employees in Tennessee. *Id.* ¶ 9.

Defendants have filed motions to dismiss Plaintiff's Complaint for lack of personal jurisdiction. In the alternative, Defendant Heritage requests that this case be transferred to the United States District Court for the District of South Carolina. In addition, both parties request an award in the amount of attorneys' fees and costs and expenses, plus any further and additional relief deemed appropriate by the Court.

## II.     Analysis

### A.     Defendant Wilson Senior Care, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff bears the burden of establishing that personal jurisdiction exists. *Carrier Corp. v. Outokumpu Oyj*, Nos. 07-6052, 07-6114, 2012 WL 678151, *14 (6th Cir. Mar. 2, 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (citing *Theunissen*, 935 F.2d at 1458). A district court may address a motion to dismiss on the parties' submissions or it may permit limited discovery and hold an evidentiary hearing, *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When, as here, a court "does not conduct an evidentiary hearing and relies solely on written submissions and affidavits to resolve the Rule 12(b)(2) motion, 'the plaintiff need only make a *prima facie* showing of jurisdiction.'" *Encore Med., L.P. v. Kennedy*, No. 1:11-cv-187, 2012 WL 966431, *3 (E.D. Tenn. Mar. 21, 2012) (citing *Indah v. S.E.C.*, 661 F.3d 914, 620 (6th Cir. 2011)).

"In order for a federal district court sitting in diversity to exercise personal jurisdiction over a defendant, the law of the forum state must authorize jurisdiction, and that exercise of jurisdiction must comport with the Due Process Clause." *Harris v. Lloyds TSB Bank,*

*PLC*, 281 Fed. App'x 489, 492 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006)). Tennessee's long-arm statute provides for personal jurisdiction over nonresidents on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code. Ann. § 20-2-214(a)(6). This statute "has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Smith v. Home Depot USA, Inc.*, 294 Fed. App'x 186, 189 (6th Cir. 2008) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005)). Accordingly, this Court employs federal constitutional due process analysis to determine whether there is personal jurisdiction over Defendants in this case. *See id.*

Due process requires that a defendant have "minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)), and that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In order to make such a showing in this case, Plaintiff must either demonstrate that there exists general personal jurisdiction over the parties in Tennessee with respect to all causes of action, or that there exists specific personal jurisdiction over the parties in Tennessee with respect to the instant cause of action. *See Intera*, 428 F.3d at 615 (citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)).

### 1.    General Personal Jurisdiction

"General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Harris*,

291 Fed. App'x at 492. WSC does not maintain an office in Tennessee, is not registered to do business in Tennessee, has no employees in Tennessee, and owns no property in Tennessee. The parties agree, and the Court affirms, that the Court may not exercise general personal jurisdiction over WSC.

### 2.    Specific Personal Jurisdiction

"The exercise of specific personal jurisdiction is proper where the claims in a case arise from or are related to the defendant's contacts with the forum state." *Harris*, 281 Fed. App'x at 494. The Sixth Circuit has set forth a three-prong test to determine the Court's personal jurisdiction over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "[E]ach criterion represents an independent requirement, and failure to meet *any one* of the three means that personal jurisdiction may not be invoked." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1298 (6th Cir. 1989) (emphasis added). However, "[w]hen the first two elements of this test have been met, a presumption arises that the third is also present, and 'only the unusual case will not meet this third criterion.'" *Morton v. Advance PCS, Inc.*, No. 3:04-cv-278, 2006 WL 2222683 (E.D. Tenn. Aug. 2, 2006) (quoting *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)).

### a.    Purposeful Availment

"Purposeful availment exists where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection"

with the forum state.'" *Harris*, 281 Fed. App'x at 495 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "It protects a defendant from being haled into a jurisdiction for random, fortuitous, or attenuated contacts." *Id.* (citing *Burger King*, 471 U.S. at 475). "Purposeful availment" is satisfied where two conditions are met: first, a foreign party's contacts with the forum state "must proximately result from actions by the [foreign party itself] that create a 'substantial connection' with the forum state," *Burger King*, 471 U.S. at 475, and second, the foreign party's connection with the forum state must be such that it "should reasonably anticipate being haled into court there," *id*.

Relevant to the instant case is the Sixth Circuit's holding in *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), that "the mere existence of a contract between [a defendant] and [a plaintiff] for seventeen months is insufficient to confer personal jurisdiction over [the foreign party]." *See also Rice v. Karsch*, No. 03-6205, 2005 WL 3046321, *9 (6th Cir. Nov. 14, 2005) (stating that the act of "choosing to deal" with others does not establish minimum contacts with their state). In *Calphalon*, the plaintiff, an Ohio corporation, engaged defendant, a Minnesota resident, as the exclusive manufacturer's representative for its products in five states, none of which was Ohio. 228 F.3d at 720. During the course of the relationship, the defendant communicated with Calphalon in Ohio via email, fax, and telephone. *Id.* at 720-21. When Calphalon decided not to renew the defendant's agreement, the defendant expressed his intent to seek damages for breach of contract and unpaid commissions. *Id.* Calphalon filed suit in Ohio, seeking a declaratory judgment that it owed the defendant nothing under the terms of the agreement. *Id.* at 721. The court granted the defendant's motion to dismiss, findings his contacts with Ohio too random, fortuitous, and attenuated. *Id.* at 723. In so finding, the Sixth Circuit held that when a contractual relationship is alleged to exist between the parties, the "*quality* rather

8

than the *quantity* of the contacts . . . [or] *duration* of the relationship" should be the focus in determining personal availment. *Calphalon*, 228 F.3d at 721.

This is not a case in which the defendant's contacts with the forum state were purely "fortuitous," "attenuated," or "passive." WSC entered into two long-term contracts with a Tennessee corporation and, unlike the defendant in *Calphalon*, depended for over six years on the Tennessee corporation for the provision of therapy services at all of WSC's South Carolina facilities and for the training and employment of all of WSC's resident therapists. In addition, unlike the defendant in *Calphalon*, WSC remitted payment to Tennessee for Plaintiff's services. WSC worked with a brokerage firm in Tennessee, to which WSC mailed checks, exchanged communications, and transmitted claim information related to Plaintiff's provision of services under the TSA contract. And WSC's contract with Plaintiff contained a choice of law provision that "though alone insufficient to establish jurisdiction, can reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *United Radio, Inc. v. Wagner*, 448 F. Supp. 2d 839, 843 (E.D. Ky. 2006) (citing *Calphalon*, 228 F.3d at 723).

It should also be noted that several courts, along with a compelling dissent by District Judge Hillman in *Calphalon*, have difficulty reconciling *Calphalon* with controlling Supreme Court pronouncements. *See, e.g.*, *Light Source, Inc. v. Display Dynamics, Inc.*, No. 09-14268, 2010 WL 2351489, *5 (E.D. Mich. June 8, 2010); *Huntington Cooper Moody & Maguire, Inc. v. Cypert*, No. 1:04-cv-751, 2005 WL 2290318, *6 (S.D. Ohio Sept. 20, 2005); *Frankenmuth Mut. Ins. Co. v. Appalachian Underwriters, Inc.*, No. 03-10193, 2004 WL 1406121, *9 (E.D. Mich. June 21, 2004). Several courts have distinguished *Calphalon* from the majority of breach of interstate contract claims, because in *Calphalon*, the plaintiff company sought declaratory judgment that it owed nothing to a former sales representative. *See id.* In this

9

case, like most others for breach of contract, Plaintiff seeks economic damage for an alleged breach of contract that threated or otherwise adversely affected Plaintiff's ability to conduct business. *See Burger King*, 471 U.S. at 475 (finding that a defendant who reached out beyond his home state and contracted with a business in a foreign state for a long-term business relationship could in no sense be viewed as random, fortuitous, or attenuated).

The Court notes that it does not base its exercise of personal jurisdiction over WSC on WSC's operation of its website. With regard to websites, the mere operation of a public website is not a sufficient "minimum contacts" to bestow personal jurisdiction over a court in Tennessee. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Websites may satisfy the purposeful availment prong only where they are "interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.* at 890. In *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed. App'x 518, 520 (6th Cir. 2006), the Sixth Circuit rejected a party's contention that a website was "sufficiently interactive" to warrant the Court's exercise of personal jurisdiction where the website's "information form solicits marketing information from the users." *Id.* Imago Eyewear's website did not allow visitors to purchase products online; they could only view the available products, and fill out an online form that would allow the company to contact the users. *Id.* The Sixth Circuit affirmed the district court's finding that the company's website was sufficiently "passive" because it did not permit users to enter into contracts with the company or to purchase products. *Id.* at 521; *see also Neogen*, 282 F.3d at 887 (holding that a website is passive if it simply posts product and contact information); *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004) (holding that the defendants' website was passive even though the website provided contact information, because it was not possible for users to purchase products through the website). WSC's website only allows users to

submit basic contact information and comments, and this does not amount to sufficient interactivity with users to support a court's exercise of personal jurisdiction.

Though the Court agrees with WSC that WSC has not reached out to consumers in Tennessee, the Court does find that WSC reached out to a therapy service provider in Tennessee and engaged in a targeted and meaningful long-term business relationship with said service provider. The Court concludes that WSC's act of contracting with Plaintiff created a "substantial connection" with Tennessee, such that WSC could reasonably anticipate being haled into court here. *See Burger King*, 471 U.S. at 475.

### b.    Arising From

"The "arising from" prong is met when the operative facts arise from the defendant's contacts with the state." *Harris*, 281 Fed. App'x at 485 (citing *Intera*, 428 F.3d at 617). "Physical presence is not required; personal jurisdiction may exist over a defendant if he 'purposefully directs communications into the forum, and those communications form the heart of the cause of action.'" *Id.* (citing *Intera*, 428 F.3d at 617-18). The Sixth Circuit has articulated this standard in a variety of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (citing *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (quoting *Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988)). This is a lenient standard, and the cause of action need not formally arise from the defendant's contacts. *See Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012); *Air Prods.*, 503 F.3d at 553; *Southern Mach.*, 401 F.2d at 384 n.29 ("Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.").

Where a contract is at issue, the Sixth Circuit has recognized that "a breach of contract action arises from the defendant's contact with the state because the contract 'is necessarily the very soil from which the action for breach grew.'" *Calphalon*, 228 F.3d at 724. Alternatively, "if the actual breach does not arise from 'the very soil from which the action for breach grew,' the exercise of jurisdiction may still be deemed reasonable if . . . the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Id.* Conversely, in a tort action, "[i]f a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee." *Morton*, 2006 WL 2222683, *3 (quoting *Chenault v. Walker*, 36 S.W.3d 45, 51 (Tenn. 2001)).

WSC avers that the subject matter of the contract completely related to work performed or potentially performed in the State of South Carolina. However, it is not necessary for the activities giving rise to the breach of contract to actually have occurred in the forum state. *LAK, Inc.*, 885 F.2d at 1303. The Court finds that under the lenient "arising from" or "related to" standard, the operative facts of this action arise from WSC's contacts with the forum state, namely its negotiation and execution of two contracts with a Tennessee corporation, its performance under the two contracts, and its use at its South Carolina facilities of therapists trained and employed by a Tennessee corporation. In addition, the consequences to Plaintiff's business operations of WSC's alleged breach of contract have a substantial connection to the forum state. Accordingly, the second prong of the *Southern Machine* test is satisfied in this case.

### c.    Reasonableness

Finally, the third condition, that the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum states to make the exercise

of jurisdiction over the defendant reasonable, requires consideration of the following factors: "(1) the burden on the nonresident defendant; (2) the forum state's interest; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Harris*, 281 Fed. App'x at 496 (citing *Intera*, 428 F.3d at 618). The Court begins its analysis by noting the importance to the reasonableness test of the fact that the first two factors are satisfied. *See Southern Mach.*, 401 F.2d at 384 ("[O]nce the first two questions have been answered affirmatively, resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found.").

The Court finds WSC's contacts with Tennessee substantial enough to make it reasonable to subject WSC to the jurisdiction of Tennessee courts. WSC negotiated and executed two contracts with a Tennessee corporation, exchanged emails and other communications with a Tennessee corporation for over six years, reaped the benefits of having therapists at its South Carolina facilities who were trained and employed by a Tennessee corporation, and developed a relationship with a brokerage firm in Tennessee, to which WSC mailed checks, exchanged communication, and transmitted claim information related to Plaintiff's provision of services under the TSA contract. It performed under its TSA and RFR contracts with Plaintiff for nearly six years. *United Radio*, 448 F. Supp. 2d at 841 (citations omitted) (finding the reasonableness prong satisfied by the "lengthy" relationship between the parties, and emphasizing that the defendant had hoped to profit financially from his relationship with the plaintiff). Further, while the Court finds *infra* in its consideration of Defendant Heritage's motion to transfer that there is a burden on the nonresident defendants in this case, such burden is not so extreme as to negate the reasonableness of Plaintiff being haled into court in the State of Tennessee.

Plaintiff and the State of Tennessee have significant interests in securing justice in this action. Plaintiff is a Tennessee corporation, the business model of which revolves around the interstate provision of therapy services to acu care centers. Its ability to adjudicate disputes arising from its contracts with such centers in a local forum is of the utmost importance, as Tennessee courts' lack of jurisdiction over the parties to such interstate contracts would force Plaintiff to adjudicate all issues surrounding the contracts in foreign forums. Similarly, the State of Tennessee has significant interests in resolving a suit brought by a Tennessee corporation for breach of a large, multi-year business agreement, and in protecting its citizens' ability to conduct interstate commerce without fear that it will require them to litigate only in foreign forums.

Plaintiff alleges that South Carolina has significantly more of an interest in hearing this dispute because the actual performance of the terms of the agreement was accomplished in South Carolina, and because the vast majority of the relevant evidence would be found in South Carolina. However, while the weighing of states interest in this case is relevant to Defendant Heritage's motion to transfer, *see intra* Part C, the strength of South Carolina's interest in the subject matter of this litigation does not defeat or diminish Tennessee's concurrent interest or the reasonableness of hauling WSC into court in Tennessee. Based on WSC's lengthy relationship with a Tennessee corporation, the interests of justice of such corporation and the State of Tennessee, and the choice-of-law provision in the RFR contract, the Court finds that Defendant could reasonably foresee being haled into a Tennessee court.

**B.      Defendant Heritage Healthcare, Inc.'s Motion to Dismiss**

**1.      Lack of Personal Jurisdiction**

Plaintiff claims only general personal jurisdiction over Defendant Heritage because of Heritage's significant and continuing contacts with Tennessee. Heritage urges that a

provision in Tennessee's long-arm statute providing jurisdiction over defendants "domiciled in, organized under the laws of, or maintaining the person's principal place of business in" Tennessee" precludes this Court's exercise of general jurisdiction over Heritage. Tenn. Code Ann. § 20-2-222. However, while said provision expressly grants general jurisdiction in three instances, it is not the exclusive source of Tennessee courts' general jurisdiction. *See* Tenn. Code Ann. § 20-2-214(a)(6) (authorizing personal jurisdiction over nonresidents on "[a]ny basis not inconsistent with the constitution of this state or of the United States"). Tennessee district courts and Sixth Circuit cases reviewing their holdings employ federal constitutional due process analysis to determine general personal jurisdiction over foreign defendants.

"General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Harris*, 291 Fed. App'x at 492. "[M]erely doing business with citizens of a state does not confer general jurisdiction over an out-of-state defendant." *ACH Food Cos., Inc. v. Wiscon Corp.*, No. 04-2589, 2005 WL 2114056, *8 (W.D. Tenn. Aug. 30, 2005) (citing *Bird*, 289 F.3d at 874). A defendant's level and type of activity must be of the sort that "approximate[] physical presence within a state's borders" *Bird*, 289 F.3d 865, 874 (6th Cir. 2002) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 233 F.3d 1082, 1086 (9th Cir. 2000)); *see also Higdon v. Cannon*, No. 1:11-cv-194, 2012 WL 424965, *6 (E.D. Tenn. Feb. 9, 2012).

In *Total Filtration Services, Inc. v. A.T. Kearney, Inc.*, No. 3:06-0624, 2006 WL 3694553, *3-4 (M.D. Tenn. 2006), our sister district court in the Middle District of Tennessee considered a case in which one defendant did not have an office in Tennessee, but was registered to do business in Tennessee and had provided extensive search services for the University of

Tennessee, and another defendant had managed a health care program instituted by the State of Tennessee, opened an office in Nashville, and maintained numerous employees in Tennessee. The court found that it had general personal jurisdiction over both defendants based on their continuous and systematic business operations within Tennessee. *Id.*

Similarly, in *In re Southeastern Milk Antitrust Litigation*, the defendant was a Delaware limited partnership with its principal place of business in Texas. It did not maintain an office or facility in Tennessee, did not advertise or manufacture products in Tennessee, had not been qualified, authorized, licensed, or chartered to do business in Tennessee, had no agents, servants, or employees living or working in Tennessee, did not maintain any bank account or telephone listing in Tennessee, paid no taxes to the State of Tennessee, did not maintain a post office box in the State of Tennessee, and did not have an agent for service of process in Tennessee. No. 2:08-md-1000, 2008 WL 2697775, *6 (E.D. Tenn. May 28, 2008). However, this Court found the defendant subject to general jurisdiction because it had purchased milk produced in Tennessee and because two of its wholly owned subsidiaries sold dairy products in Tennessee. *Id.* The Court found such business contacts sufficiently "continuous and systematic" to warrant the exercise of general personal jurisdiction. *Id.*

While Heritage argues that Plaintiff has failed to allege that Heritage maintains contacts was the State of Tennessee "at a level that would render Heritage subject to personal jurisdiction in Tennessee with respect to all causes of action," the record establishes otherwise and this Court finds that Plaintiff has met its burden of showing the existence of general jurisdiction. From January 29, 2004 to November 30, 2010, Heritage provided therapy services at Hillcrest Healthcare Communities, Inc.'s facilities in Knox County, Tennessee. [Lesa Fugate Day Aff., Doc. 25-3, ¶ 5.] Thus, at the time the events occurred giving rise to this action, and at

the time this action was filed, Defendant Heritage had been physically present and conducting business in Knox County, Tennessee continuously for over six years. During this time, Heritage had numerous employees, including physical therapists, occupational therapists, and speech therapists working in Hillcrest facilities in Knox County. *Id.* ¶ 6. In addition, Plaintiff claims that Heritage solicited business from Hillcrest and other potential customers in Knox County. [Compl. ¶ 9.] Finally, Plaintiff claims that Heritage used the internet to solicit prospective employees in the Knoxville area to submit job applications. *Id.* While Heritage is not incorporated in Tennessee and does not have its principal place of business in Tennessee, the Court finds that Plaintiff has made a prima facie showing that Heritage had sufficiently "continuous and systematic" contacts in Tennessee to justify subjecting Heritage to general personal jurisdiction in its courts. Accordingly, Heritage's motion to dismiss for lack of personal jurisdiction will be denied.

### 2.        Failure to State a Claim

Heritage also requests that Plaintiff's statutory and common law claims against it for inducement of breach of contract and interference with contract be dismissed because the alleged actions of Heritage that form the basis of the claim took place in South Carolina. Plaintiff agrees that Sixth Circuit authority precludes Plaintiff's statutory claim under Tenn. Code Ann. § 47-50-109 for inducement of breach of contract. *See Telecomm Eng'g Sales & Servs. Co. v. S. Tele. Supply Co.*, 518 F.2d 392, 395 (6th Cir. 1975) (finding that an earlier version of Tennessee's Inducement of Breach of Contract law "is *inapplicable* to any conduct on the part of [a] defendant" whose alleged "acts of persuasion, misrepresentation, or other means, to induce or procure the breach of contract, took place" outside the State of Tennessee"). However, Plaintiff asserts that its common law claim against Heritage for interference with contract survives,

because South Carolina, like Tennessee, recognizes such a claim. *See, e.g.*, *Webster v. Holly Hill Lumber Co.*, 234 S.W.2d 232, 234 n.1 (S.C. 1977) ("This Court has recognized the tort [of intentional or wrongful interference with a contractual relationship] on several occasions.") (citations omitted). Heritage responds that Plaintiff's Complaint fails to allege all of the elements of the common law claim of tortious interference with a contract under South Carolina law.[1]

Because the Court orders *infra* the transfer of this action to the United States District Court for the District of South Carolina, and because Plaintiff's common law claims against Heritage arise under South Carolina common law, the Court declines to rule at this time on the sufficiency of Plaintiff's pleadings as to said claims. The Court will deny as premature Defendant Heritage's motion to dismiss for failure to state a claim, subject to renewal.

### C.     Defendant Heritage Healthcare, Inc.'s Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. "Section 1404(a) is permissive in nature, and as its language suggests, 'district courts have "broad discretion"'" in considering motions thereunder. *Encore Med., L.P. v. Kennedy*, No. 1:11-cv-187, 2012 WL 966431, *7 (E.D. Tenn. Mar. 21, 2010). The burden is on the moving party to establish the need for a change of venue, and if the moving party fails to make such a showing, then the plaintiff's choice of forum will be given deference. *Gomberg v. Shosid*, No. 1:05-cv-356, 2006 WL 1881229, *10 (E.D. Tenn. July 6, 2006) (citing

---

[1] Under South Carolina common law, the elements of a cause of action for tortious interference with a contract are (1) the existence of a valid contract; (2) the alleged wrongdoer's knowledge of the contract; (3) the alleged wrongdoer's intentional procurement of its breach; (4) the absence of justification; and (5) damages**.** *Nucor Corp v. Bell*, 482 F. Supp. 2d 714, 726-27 n.10 (D.S.C. 2007) (citing *Southern Contracting, Inc. v. H.C. Brown Constr. Co., Inc.*, 450 S.E.2d 602, 604 (S.C. 1994).

*DeRoyal Indus., Inc. v. Hendricks Orthotic Prosthetic Enters., Inc.*, No. 3:04-cv-534, 2005 WL 1804528, *5 (E.D. Tenn. July 28, 2005)).

The threshold consideration is whether the action is one that could have originally been brought in the proposed transferee district court. *Id.* The parties do not dispute that this action could have been brought in the United States District Court for the District of South Carolina. The Court agrees, since both Defendants reside within that district and all of Defendants' alleged wrongdoing took place in South Carolina.

The second step is a balancing of factors. "A Court may consider any factor that may make the eventual trial easy, expedious, and inexpensive," *id.*; *see also Cherokee Export Co. v. Chrysler Int'l Corp.*, 142 F.3d 432 (6th Cir. 1998); however, district courts generally consider the following nine various private and public interests:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Mardini v. Presidio Developers, LLC*, No. 3:08-cv-291, 2011 WL 111245, *6 (E.D. Tenn. Jan. 13, 2011) (citations omitted). The convenience of the witnesses is often considered the most important factor. *Id.* (citing *Chad Youth Entertainment Ctr., Inc. v. Colony Nat. Ins. Co.*, No. 3:09-0545, 2010 WL 455252, *3 (M.D. Tenn. Feb. 2, 2010)). Courts also take into account "other public-interest concerns, such as systemic integrity and fairness," *Encore*, 2012 WL 966431, *8 (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). A

transfer is not appropriate if the result is simply to shift the inconvenience from party to another. *Gomberg*, 2006 WL 1881229, *10 (citing *DeRoyal*, 2005 WL 1804528, *5).

The Court finds that the relevant considerations weigh in favor of transfer. While Plaintiff insists that factors (1) and (3) favor neither party, the Court agrees with Defendant Heritage that almost all of the documents and witnesses relevant to the Complaint will be located in South Carolina, and it would be far more convenient for non-party witnesses for this case to proceed in South Carolina. Plaintiff's argument in this regard fails to take into account that the Complaint implicates two separate contractual agreements: the RFR between Plaintiff and Defendant WSC, and the outsourcing arrangement between Defendant WSC and Defendant Heritage. An examination into the facts and circumstances surrounding, and the intent of the parties with regard to, the latter agreement will concern few *if any* documents, witnesses, or other sources of proof located in Tennessee. Thus, Plaintiff's case against Defendant Heritage depends almost entirely on witnesses and documents in South Carolina.

Moreover, while the negotiation and execution of the RFR occurred in both states, WSC's performance of its rights and obligations thereunder, and the alleged breach thereof that forms the basis of this case, took place entirely in South Carolina. Conversely, Plaintiff's performance under the contract consisted of *not taking action* against WSC when WSC hired Plaintiff's employees or former employees. There will be little *if any* evidence surrounding such omission, and any such evidence would be irrelevant to this case since no facts surrounding Plaintiff's performance under the contract are in dispute. Accordingly, the Court finds that the vast majority of witnesses and documentary evidence in this case will be in South Carolina, and that factors (1) and (3) therefore weigh in favor of a transfer of venue.

Factor (2), the availability of judicial process to compel the attendance of unwilling or uncooperative witnesses, favors neither party, as compelling the attendance in either state of unwilling witnesses from the other state is equally possible. Factor (4), the residence and convenience of the parties, favors neither party, as Plaintiff is a resident of Tennessee and would be most convenient in its courts, and Defendants are residents of South Carolina and would be most convenient in its courts. And the Court has no information about factor (5), the relative financial means and resources of the parties; Defendant Heritage insists it favors neither party, as all of the parties are corporations with sufficient financial means.

Factor (6), which requires the Court to consider the locus of operative facts and events giving rise to the dispute, strongly favors a transfer of venue. As explained *supra* in the Court's discussion of factors (1) and (3), South Carolina is the locus of operative facts giving rise to all claims in Plaintiff's Complaint. Apart from the economic damage allegedly suffered by Plaintiff as a result of Defendants' actions, no fact that is in dispute and relevant to the determination of Plaintiff's claims took place in Tennessee. Rather, the success of Plaintiff's causes of action will depend heavily on evidence surrounding the termination of the original TSA contract, the hiring by WSC of Plaintiff's employees and former employees, WSC's attempt to perform therapy services "in house," Heritage's communications with Plaintiff prior to their contracting for services, and Heritage's and WSC's performance of their outsourcing contract. South Carolina courts have a significant interest in litigating a dispute concerning allegedly tortious conduct that took place on its own soil. *See Encore*, 2012 WL 966431, *9.

Factor (7), the potential judicial forum's familiarity with the governing law, favors neither party, as both forums' laws are likely to be applied in this case. The Court acknowledges that, due to the choice of law provision in the contract between Plaintiff and

Defendant WSC, Tennessee law will govern any issues arising out of WSC's alleged breach of the contract. In general, this preponderates against a transfer. However, Plaintiff has concurred with Defendant Heritage's motion to dismiss the statutory claim asserted against Heritage under Tennessee law. And with regard to the common law claim against Heritage for tortious interference with a contract, Plaintiff insists that it should not be dismissed because South Carolina recognizes such a claim. Because the Court anticipates that both Tennessee and South Carolina law will apply in this case, the relevant federal courts' familiarity with the governing law does not favor either party.

Factor (8) weighs against a transfer, as Plaintiff chose to bring this action in its home state of Tennessee. However, while Plaintiff would have the Court accord "great deference" to its choice of forum, [Doc. 25, at 21], the Supreme Court has specifically instructed that this factor "is only one relevant factor for [the court's] consideration," *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). District courts in the Sixth Circuit follow this reasoning and balance plaintiff's choice equally along with the other factors in the § 1404 analysis. *Eperson v. Trugreen Ltd. Partnership*, No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, *6 (W.D. Tenn. Oct. 5, 2010) (citing *DeMoss v. First Artists Prod. Co.*, 571 F. Supp. 409, 413 (N.D. Ohio 1983) ("Courts in this circuit do not assign plaintiff's choice paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors.")).

Finally, the Court finds that factor (9), the interest of justice, favors a transfer of venue. It is evident to the Court that Tennessee's only relevance to this case is the fact that Defendant is incorporated and has its principal place of business Tennessee, and the fact that the parties' agreement contained a choice of law provision for Tennessee. Conversely, South Carolina courts have a significant interest in litigating a dispute that involves a contractual

arrangement between and the possible tortious activity of two of its resident corporations, many employees at said corporations, and allegedly tortious conduct that took place on its own soil. *See Encore*, 2012 WL 966431, *9.

After considering the facts of this case, the parties' positions, and the applicable factors, the Court finds that Defendant Heritage's request for a transfer of venue pursuant to 28 U.S.C. § 1404 is well taken. Accordingly, Heritage's motion to transfer venue will be granted.


**III.    Conclusion**

For the reasons stated herein, it is hereby **ORDERED** that Defendant Wilson Senior Care, Inc.'s Motion to Dismiss [Doc. 4] is **DENIED**, and Defendant Heritage Healthcare, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue [Doc. 6] is **DENIED IN PART** and **GRANTED IN PART**. Defendant Heritage's request that the Court dismiss this action for lack of personal jurisdiction is **DENIED**; its request that the Court dismiss this action for failure to state a claim is **DENIED AS PREMATURE**, subject to renewal; and its request the that Court transfer this action is **GRANTED**, whereby the above captioned case is hereby **TRANSFERRED** to the United States District Court for the District of South Carolina. Defendants' requests for attorneys' fees and expenses are **DENIED**.


**IT IS SO ORDERED.**


**ENTER:**

_____s/ Thomas W. Phillips_
United States District Judge